Good morning, ladies and gentlemen. Our first case of the morning is case number 118023, People v. Dennis Ligon. Are the parties ready to proceed? Your Honors, Counsel, I am Assistant State's Attorney Katherine A. Sherrill on behalf of the people of the State of Illinois. May it please the Court. The appellate court held that the penalty for aggravated vehicular hijacking with a BB gun charged as a bludgeon was disqualified. It was disproportionate to the penalty for armed violence predicated on vehicular hijacking with a Category 3 weapon. The Court also held that the life sentence mandated by the Habitual Criminal Act, which I'll refer to as the HCA, was disproportionate when compared to the Class X recidivist provision if applied to armed violence, the armed violence offense. But the appellate court was incorrect on several bases. First, as a matter of law, the identical elements test is not satisfactory. In this case, because in 2002, this Court held in Davis, pursuant to principles of statutory construction, that a BB gun, even if used as bludgeon, was not an armed violence Category 3 weapon. Therefore, the elements in this case are not identical. This has been and still is our position throughout this litigation. Defendants' equitable estoppel and forfeited arguments are not valid. In his indictment for aggravated vehicular hijacking, defendant was charged with the use of a bludgeon based on his possession of a BB gun, which legally constituted a dangerous weapon under aggravated vehicular hijacking. Contrary to defendant's claim, this does not morph into an acknowledgment that this same weapon constitutes a Category 3 armed violence weapon. This has never been our position, and based on these principles, the first holding of the appellate court should be reversed outright. Additionally, the appellate court's second holding, premised on the HCA, is erroneous. While the appellate court failed to provide any analysis, defendant's arguments failed for several reasons. The proportionate penalties clause does not apply to defendant's life sentence imposed pursuant to the HCA. Rather, this clause only applies to individual substantive offenses and the penalties set for that specific offense, not to a sentence imposed pursuant to a freestanding recidivist provision like the HCA. The identical elements test itself is an abstract elements test designed to compare elements of individual substantive offenses. Because the HCA is not attached to any individual substantive offense, there are no elements to compare. By definition, this abstract identical elements test is incapable of measuring anything other than substantive offense elements. It can't account for prior criminal history, the very basis of the HCA. Perhaps the strongest proof that the HCA is not attached to any individual substantive offense is that its application would result in an absurdity. If the test applies to the HCA, then aggravated vehicular hijacking with HCA life sentence will always have the same elements as aggravated vehicular hijacking with the affixed 7 to 30 penalty range. Because the HCA penalty will always be greater, it will always be disproportionate to its standard counterpart, effectively nullifying the HCA for all practical purposes. This results clearly absurd, further proving the fallacy of defendant's argument. The clause was intended to measure the internal relationship between the seriousness of an individual offense and the specific penalty that the legislature affixed to that offense. Freestanding recidivist provision simply cannot fit the proportionate penalties equation. The clause does not apply to the HCA and the second holding of the appellate court should also be reversed. In an effort to salvage the second holding, however, defendant makes a two-part argument. He argues that because the 7 to 30 year penalty range for aggravated vehicular hijacking is void, therefore that void penalty cannot trigger the HCA, and since that penalty is void, he did not commit his third class X offense that triggers the HCA. But it is not the penalty provision that triggers the HCA. It is the class X conviction that triggers it. Even if the 7 to 30 year penalty were void in this case, defendant's class X conviction remains invalid. It is the class X conviction that remains intact and still triggers the HCA. This is so because by the very language of the clause itself, it only applies to penalty provisions. It cannot be used to undo a conviction obtained by proof beyond a reasonable doubt. Indeed, on multiple occasions, this court has recognized this fact where it's left convictions intact, but remanded for resentencing in compliance with the proportionate penalties clause. Defendant's class X conviction for the aggravated vehicular hijacking remains intact and valid, and because it's his third class X conviction, it triggers the HCA. This court should therefore reject these arguments and reverse appellate court's second holding, applying the proportionate penalties clause to the HCA. But the appellate court's finding that the penalty for aggravated vehicular hijacking with a bludgeon is disproportionate has much broader implications beyond just the striking of the instant penalty provisions. To be clear, your honors, we're not challenging the identical elements test. We're asking this court to reconsider its current post-Christie interpretation of the armed violence statute as a broad, free-ranging weapon statute that may be used as a comparator to invalidate many more specific weaponized offenses. In addition to, if this interpretation continues, all class X statutes and penalties involving bludgeons prior to Public Act 95688 are at risk. In addition, several other problems have resulted from this interpretation, namely the application of the clause beyond its intended purpose to recidivist provisions and, this is cases coming, to good conduct provisions. Secondly, it's resulted in an ad hoc remedy paradigm, resulting in an inability to fashion a uniform remedy where violation occurs from something other than an amendment to a statute. And third, it has resulted in the unnecessary invalidation of multiple more specific weaponized statutes. We ask this court to return to its pre-Christie interpretation of armed violence as a narrow, residual weapons offense that applies only to felonies that do not have their own weaponized versions for the following reasons. It remains true to the statutory maxims at play in this case. It gives effect to the legislative intent when it enacts a weaponized statute, and it resolves all the problems identified above. Now, with respect to the maxims of statutory construction, the current interpretation permits the use of armed violence as a duplicate comparator offense to unnecessarily invalidate a vast array of more specific weaponized offenses. The upshot of this current interpretation is that the legislature intended even long-standing offenses like armed robbery to be invalidated by the enactment of armed violence. In fact, this current interpretation means that the legislature enacted an automatically unconstitutional aggravated vehiculous hijacking statute in 1993. You indicate that the state should have never had armed violence was never meant to apply to weaponized offenses, right? Correct. But in candor, you admit that the state is at least partially responsible because that's exactly what you've done in the past. Yes. All right. So why shouldn't we agree with the defendant's argument that every argument that you've made and have made is precluded either by a decision of this court as a result of what's happened in the past, or a prior position of the state has taken? Is he wrong in asserting that? It's, it is, this court is not bound to blindly stand by stare decisis and watch multiple statutes after statutes be stricken as unconstitutional. This court has a duty to uphold the validity of statutes if possible, and to resolve any inconsistencies in the validity. The people submit that if this court realizes its interpretation of armed violence to its earlier understanding, all of these statutes would be valid, the armed violence statute would remain valid, and it would be in keeping with the legislative intent that is clearly revealed by its subsequent amendatory history of not only armed violence in the past, but also simultaneous amendments to the more specific weaponized offenses that could be compared to. So irrespective of the people's prior position, which we now admit was incorrect, and this court should examine whether these cases should be changed, and whether the legislative intent and the validity of statutes should be held. That's a procedural question, ma'am. This conviction took place in January of 2001, this 214-01 petition was filed in January of 2012, 11 years after the final judgment. Do you have any issue, are you concerned, are you challenging, whether or not this issue could be raised in 214-01? Under this court's case law, a facially invalid statute or claim apparently can be raised at any time, uncollateral and indirect. So while the people feel that the ability to raise these type of claims should be limited somehow collaterally, this court's case law prohibits that argument. Ms. Sherrill, is it appropriate to change the class of offense for resentencing when there's been a proportionate penalties violation? Your Honor, that's our last point. No. For a number of reasons. The appellate court's remedy of remand for resentencing on the class 1 offense of armed violence was improper. It encroaches upon the exclusive prosecutorial function of choosing what to charge and prosecute. It encroaches upon the legislative function of affixing penalties. And it's inconsistent with Hodge-Sheldon's limits. In those cases, this court held that a defendant must be sentenced pursuant to the offense of conviction because there's no authority to modify the charging instrument on appeal. It's a violation of powers because the class designation does not just guide sentencing ranges. It is the legislative determination of the seriousness of an offense. It is based on factors that only the legislature is equipped to address, such as ease of commission, frequency of occurrence, actual harm to society. That classification is the seriousness of that offense. It's separate and distinct from the penalty provision. And that distinction is borne out by the language of the clause itself. The clause says that the penalty must be set according to the seriousness of the offense. So alteration of the class or the conviction encroaches on separation of powers principles. Let me get one question. Justice Kilbride wrote a special concurrence in Clemens, and he advocates there the overlap approach. How would that affect this? How do you feel about that? It's a viable remedy. It's equally viable. It's as viable as what defendant calls Thompson remedy, that you strike the defendant's defense. It's probably more applicable because it also addresses a difference in the minimum sentencing ranges. But any remedy that this court, the people submit that any remedy this court chooses for a case like this may not be adequate to use the armed violence statute as this broad comparator. It wouldn't work with respect to good conduct provision challenges. So the point, the remedial tension and the ad hoc remedial problem with this analysis results from the interpretation of armed violence in the people's estimation. And all of these problems identified in this case would be eliminated, would cease to exist, if the armed violence statute's construction is realigned to the legislator's intent that it serve a deterrent purpose and that this court limit any felony language like it did pre-Christie to offenses that are not duplicated in the code elsewhere. Does Public Act 95-688 take care of this for the future? Yes, it does in the future. But as this case shows, all class X bludgeon type offenses prior to the enactment of 688 are potentially at risk, which would lead to the invalidation of multiple statutes and sentences. For these reasons, unless this court has, oh, with respect to the defense forfeiture argument made in the remedy portion, the people just submit that proposal of an alternative argument certainly doesn't forfeit our principal one, said his life sentence is valid. For these reasons and those stated in our briefs, the people ask this court to return to its pre-Christie interpretation of armed violence and to reverse both of the appellate courts holding in this case. Thank you.  Your Honors, this court should affirm the appellate court's opinion vacating Mr. Ligon's life sentence because the proportionate penalties clause applies to all penalties, including Mr. Ligon's, and because the appellate court correctly found that the life sentence for aggravated vehicular hijacking is disproportionate to the maximum 30-year sentence for armed violence, which we believe is an identical offense. Your Honors, there's no basis for the state's claim that a sentence under the Official Criminal Act is not subject to proportionate penalties clause review. Certainly there's no basis in the clause, which is broadly entitled Limitations of Penalties After Conviction, and which expressly applies to, quote, all penalties. So under that plain language, the penalty here, life, should be reviewed under the proportionate penalties clause. Now the state argues that the life sentence here has no relationship to the conviction of aggravated vehicular hijacking, and instead that it's related to that conviction plus the prior class X convictions. The state relies on people-be-cumming as a decision of the appellate court first district, which held that the act is a sentence imposed for all three class X offenses. But this court refuted that interpretation in People-Be-Done-Again in 1995, I believe, where it said that the punishment imposed under the act is for the most recent offense only. And it was important to this court to say that, and this court relied on the abitual provisions, abitual criminal provisions that way, avoid raising due process, double jeopardy, and ex post facto concerns. So this court explained that because it's only for the most recent offense, the act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent offense. So under Done-Again, we know that the life sentence here is for aggravated vehicular hijacking and only for aggravated vehicular hijacking. So it was proper for the appellate court to subject that sentence to proportionate penalties review and apply the identical elements test. Is your challenge a facial challenge to the statute, or is this as applied? Your Honor, the challenge is that the sentence is void because it violates the proportionate penalties clause. The state, in the appellate court and in this court, has agreed that if that's true, then there's no reason to raise this in a 214-101 petition. That's not my question. That's a different question. Go ahead and answer that one, but I have a different question. It's a challenge to whenever aggravated vehicular hijacking is based on a bludgeon, as we maintain that it was here, as the indictment says so. So that class X penalty in the life sentence is disproportionate. So for all bludgeon offenses. Usually when we do these kinds of cases, we look at the elements of the crimes and compare them to determine whether or not they have identical elements, correct? You're asking us now to do something else, to now look at this defendant's criminal history background and to factor in his criminal history background into the sentencing provisions. Has that ever been done in any other kind of proportional penalties case? Well, Your Honor, I don't think this court should identify what it's attested to. I think we first apply it to the aggravated vehicular hijacking statute and ask, are those elements identical and what are the penalties? And then we can see a proportional penalties violation right there. And then because the class X designation is void, it can't trigger a life sentence. But then of course, Your Honor is correct, then we can also look at it, just look at a life sentence based on aggravated vehicular hijacking with one background, with his background. And then look at the 30 year sentence he would have gotten with the very same background had he been convicted of the same identical offense. So does that make this an applied, as to him, his criminal history background? What if there's someone who's charged with not armed violence, but with the aggravated vehicular hijacking? This is their first conviction. Would there be a constitutional violation then? Yes, Your Honor. So if you're charged with aggravated vehicular hijacking based on a bludgeon, just on a bludgeon, because you're charged based on a firearm, the armed violence version is also class X. So there's no proportional violation there. But based on a bludgeon, the person charged with his first aggravated vehicular hijacking offense would be disproportionate to armed violence based on vehicular hijacking with a bludgeon. Does that answer your question? Perhaps. Whether it's applied, the identical elements testifies to the pronouncements of the legislature. And I think we're, you know, directly within that here. We're looking at the elements of the two offenses, and we're looking at the effect of the background under the Individual Criminal Act. So in one instance it's two prior class X's that trigger a life, but those same prior class X's under the different provision trigger a maximum of 30 years. So I think we're still comparing legislative pronouncements of the series as a conduct. Here the conduct was only class I serious armed violence. And the elements, the conduct as described by the elements. So I think the penalties are different. We believe the elements are identical. Mr. Legon, the state has raised in this court an argument it did not raise in the appellate court below, which is that Mr. Legon was not charged with a bludgeon, but with a BB gun, and was not convicted of a bludgeon. But as I think our brief sets forth, it's incorrect. He was charged with a bludgeon, not using a BB gun like a bludgeon. And I encourage you to look at the indictment. One in particular is that it was necessary to charge something other than a firearm under the current version of this offense to state it, because prior to 2000, subsection A3 of aggravated victim hijacking was just based on, quote, a dangerous weapon. But after 2000, it was based on a dangerous weapon other than a firearm. And the state fulfilled its obligation to indict an offense by alleging bludgeon, which of course is not a firearm. So if we remove that allegation now, we are left with simply a charge of dangerous weapon, which is the old statute. So the state wouldn't have charged the aggravated version. They would have simply charged the simple version. So we think it's race to Dakota as well as being forfeited the claim that this was not a bludgeon. Regarding Peabody Davis, for that reason, we don't think this court has to revisit its holding of Peabody Davis. We explained in our briefs that we think the state is relying too much on it, but here, because we know it's a bludgeon, because it's race to Dakota, we can just proceed under that understanding. So there's no basis there to overturn the appellate court's decision. Moreover, as we argue, and I don't think the state meaningfully responds to this, the appellate court's identical elements analysis here was consistent with this court's decision in Peabody Lewis, where this court applied the attest to the elements as alleged in the indictment. Your Honor, maybe this could bring me back to Justice Dyson. In Lewis, you apply the identical elements test to the elements in the indictment. Now, I think it's good to remember that a sentence of life under the habitual criminal act is not something that is alleged in the indictment. In fact, the state can't even petition for it until following trial. So I think it would be proper to look at the offensive argument that they're hijacking. Say, we do the Lewis comparison. This is disproportionate to armed violence, so state, you can proceed if you want with armed violence, class one, and then we never get to the life sentence. So for all those reasons, I think that the appellate court's identical elements test analysis was correct. With regard to remedy, the important point I want this court to understand is we were all in agreement that any remedy, if this court were to find a portion of the penalty violation, in the appellate court below, we were all in agreement that Mr. Ligon's sentence would have to be reduced to a maximum of 30 years. There are several ways you can do this. We have no objection to what we call the Thompson remedy, which is just to excise the portion over 30 years, because that would be consistent with this court's saying that any portion of the sentence that is void or enforceable. We, of course, have no objection to what the appellate court did,  but we, of course, the state points out that Clemens' court questioned whether that was the most appropriate remedy. We think this court could simply reduce the aggravated victim of hijacking to class, class one. That would remedy it and re-sentence. Under any scenario, Mr. Ligon is going to face a maximum of 30 years, or if you employ the Thompson remedy, just reduce it to 30. We have no objection to any of those remedies, and we think those are all appropriate. As far as revisiting the interpretation of armed violence, well, I think you've already rejected that argument several times. I could talk about it if you'd like. It's worried about some type of case coming up. It cites a case in its brief that's a Rule 23 order from a first-stage dismissal about identical elements in good conduct. Apparently the appellate court found something to argue with. That's all. That's the horrible case that's cited. I don't think we have to worry about the identical elements test expanding. This court has been very clear about how we apply it for 20 years, and it hasn't led to anything. It's the appellate court's opinion. It was straightforward, and we believe it came to the correct conclusion. Your Honor, if there are no further questions, we would ask that this Court affirm the judgment of the appellate court. Thank you. Defendants claim that this is just a regular proportionate penalties analysis and that the proportionate penalties clause applies to the HCA. This is belied by what the appellate court actually did. The traditional analysis ends full stop at the 7 to 30 year aggravated vehicle hijacking penalty provision. To do another step and sweep in recidivist provisions like the HCA is not supported at all by the language of the clause. The clause, as we stated in opening, cannot accommodate the HCA, the fact that it's based on conduct and it has no statutory elements. It is not attached to any particular substantive offense. It applies when certain conditions are met with respect to a whole category of offenses. So by logic, there's no elements, it's based on conduct. This Court's mis-test of identical elements cannot apply, and the proportionate penalties clause cannot fit this equation. One of the conditions in this case is that there be an underlying class X felony conviction. Is that true? A third, yes, a third class X conviction. Okay, and so as I understand the defendant's argument, the conviction here is for a class X, but if it would have been a class 1, same elements for the conviction, then HCA would not apply. That's correct, but the people, this Court has stated on multiple occasions in Hochschild recently, that the people are never required to charge a lesser offense if we can prove the greater offense, which we did in this case at trial, beyond reasonable doubt. And in fact, the disproportionate aggravated vehicular penalty, vehicular hijacking penalty, was never applied in this case. The proportionate penalties clause, specifically the identical elements test, cannot, by logic and by practicality, apply to standalone freestanding recidivist provisions that are based on conduct. The Cummings analysis and the Dunnegan problems are not what the people cited in support. It's just the fact that Cummings found that the identical elements test could not apply to the HCA. With respect to your question, Justice Tice, whether it's a facial challenge, it's in proportionate penalties, as this Court recognized in Blair, those are, when there's a finding, those sentencing provisions are unenforceable on the basis of the finding, you know, facially, so it's a facial challenge. What if, under my scenario, what if there was not a second or, here, a third class X felony? I mean, what if it's just a straight up aggravated vehicular hijack? I mean, my concern is, it appears that the analysis here that seems very different than the analysis we do traditionally, rises and falls on each defendant's criminal history background. Yes, the recidivist provisions that have surfaced in this case only are triggered by required criminal background. So that's necessarily the case if this Court decides that it does, that the proportionate penalties clause, the identical elements test specifically, apply to freestanding recidivist provisions. But if, that's why the people feel it's incumbent for us to suggest to this Court that it reconsider its interpretation of armed violence, because under the current interpretation, that is the case. If there's no criminal background, and any number of substantive offenses, armed robbery with a bludgeon, aggravated vehicular hijacking with a bludgeon, aggravated kidnapping with a bludgeon, are always going to be class, you know, prior to 95-688 class X when compared to a Category 3 weapon in the armed violence scheme. So the people are very concerned that all of the convictions based on class X crimes committed with bludgeons are at risk under the current interpretation of the armed violence statute. That's why we ask this Court to take another look at it. The state, again, our Davis argument is not that we are disavowing that we charge defendant with a bludgeon. We charge defendant with a bludgeon under the aggravated vehicular hijacking statute. It is by law, as a matter of law, an aggravated vehicular hijacking dangerous weapon. On the other hand, as a matter of law, based on statutory construction principles, this Court held that a BB gun is not an armed violence weapon. And that, the people have always maintained that position and we do not, we have not forfeited that argument. And therefore, Lewis doesn't apply here because in Lewis, the firearm was, as a matter of law, an armed violence Category 1 weapon. Here, the BB gun, under Davis, is not an armed violence weapon. Was Davis confined to any specific facts of how the BB gun was used? No, Your Honor. The state, I have the quote, but this Court stated, as a matter of law, no matter how the bludgeon is used, based on statutory construction principles, it is not an armed violence weapon of like nature. It is not an armed violence weapon of character in the Category 2, now Category 3 armed violence weapons. Was the BB gun being used to fire at someone in Davis as opposed to being used? Yes, it was. Does that distinguish it? No, it doesn't because this Court's ruling was based on principles of construction that the BB gun, this Court even said no matter how it's used. The remedy, we've always maintained that the life sentence is valid. That's our principle argument for a number of reasons. We propose the Thompson remedy to strike the disproportionate part of a sentence as alternative. Again, making alternative arguments doesn't forfeit our principle one. For the reasons that you enunciated earlier with regard to asking us to reexamine the, not basically the identical elements test, but the armed violence aspect of it, could you use those same reasons to reevaluate whether we should have the identical elements test and simply rely on the cruel and degrading and unconscionable aspect of it? That's an interesting question. I studied the constitutional debates and I know that when they were debating this clause, the framers intended it to operate almost identically to the Eighth Amendment jurisprudence. There's discussion about that in the convention debates. I suggested that in Lewis. This Court rejected it. I think that that's what should actually happen because it's based on the intent of the framers and I think that it would eliminate this invalidation of all these other statutes and it would stop, see defendants now can use this jurisprudence to raise future unknown challenges to other provisions that the state can't even predict. Now defendant says that McGee is not important. It is a first stage post conviction case, but it's a sign of things to come. And who would imagine when this Court said in Christian Lewis that identical elements was based on sound logic, that it would be used to apply to good conduct provisions that aren't penalties at all, but rather grant a legislative favor. So unless this Court has any more questions, the people urge this Court to reconsider armed violence and its construction. And it would not be a bad idea to reconsider identical elements, although the people are not challenging that. And we ask this Court to reverse the two appellate court holdings that we have cited in this case. Thank you. Case number 118023, People of the State of Illinois v. Dennis Ligon, will be taken under advisement as agenda number five. Ms. Shuro and Mr. Cassidy, thank you very much for your arguments this morning. You're excused at this time.